A09A2011, A09A2012. SPIVEY v. SMITH et al.; and vice versa.
(693 SE2d 830)

SMITH, Presiding Judge.

These companion cases relate to a boundary line dispute between Leon Spivey and the trustees of Red Bluff Church ("the Church"). In Case No. A09A2011, Spivey appeals from the trial court's grant of a judgment in favor of the Church following a jury verdict in his favor. In Case No. A09A2012, the Church asserts that the trial court erred by failing to convene a new trial for consideration of the damages and attorney fees claimed by the Church. For the reasons set forth below, we affirm in Case No. A09A2011 and vacate in part and remand in Case No. A09A2012.

> On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation omitted.) *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 235 (2) (612 SE2d 17) (2005).

So viewed, the record shows that the Church sued Leon Spivey to establish a boundary line between land owned by the Church and adjoining land owned by Leon Spivey. The lawsuit was triggered by Spivey's objection to the Church's attempt to remove timber to fund needed repairs for the Church in 2006. This timber was located on the south end of the Church's land. The Church submitted evidence showing the value of this timber and that it no longer had access to this timber.

The record shows that the original deed for the Church was destroyed in a fire. In 1951, Dan Spivey conveyed to the Church land

> bounded and described as follows: 4 acres, more or less, of lot of land #149, in the 7th land district of Atkinson County.

> Said parcel of land being bounded as follows: North by the edge of Red Bluff Creek cornering at a water Oak tree 8 or 10 steps up from an old gin dam. Bounded on the East by lands of Dan Spivey and a blazed line running somewhat north & south & cornering on a Sweet gum tree right where Clyatt James land line now is. Bounded on the South by land of Clyatt James running west to the edge of Red Bluff Creek. Bounded on the West by the edge of Red Bluff Creek. This parcel of land is being set aside for Church and graveyard purposes.

Dan Spivey also conveyed land to his brother R. H. Spivey, the defendant Leon Spivey's father.

In November 1987, R. H. Spivey conveyed 180 acres of land "more or less" adjoining the east boundary of the Church to three of his sons: Leon, George, and Tommy. R. H. Spivey died in December 1987, and left the same land to these three sons in his will. The property was described as being bound "on the West by the Red Bluff Church property." On January 12, 1990, the probate court appointed George and Leon Spivey as co-executors of their father's estate. The probate court authorized them "to discharge all the duties and exercise all the powers of Executor(s) under the Will."

Roger Smith, a Church trustee, testified that George Spivey contacted him after his father died and asked to meet to discuss the property line between the Church and the Spivey property. They walked the property together, agreed on the western boundary for the Spivey property and the eastern boundary for the Church property, and marked it. George Spivey told Smith "that he was representing his family," and Smith assumed this meant his brothers and sisters. Smith testified that "they agreed to go their separate ways and see if the trustees would accept it, and it was [Smith's] understanding that [George] was going to go back to his family and see if they would accept it." According to Smith, he later told George Spivey that the Church accepted the boundary, and George Spivey told him "something to the effect that they did, too, and I guess he sent the surveyor" to "connect the dots" and prepare a survey. Smith admitted that he never talked with Leon or Tommy Spivey about the placement of the boundary line; he assumed they were communicating through their brother George, who he understood was representing them. Later, he went to George Spivey's house to pick up the survey prepared by the surveyor. He did not recall Leon or Tommy Spivey being present.

The surveyor testified that he would have prepared the western boundary of the Spivey property and the eastern boundary of the

Church property based upon either a deed or agreement of the parties, but he did not recall which method he used to establish the boundary. Charles Smith, another church trustee, testified that the boundaries described in the 1951 deed to the Church were "almost identical to the plat prepared by the surveyor on October 8, 1990, except that the Church gave up at least an acre in the agreed-upon plat. He and other trustees testified that the Church had always utilized this tract which contained 19.93 acres.

On November 19, 1990, the three brothers conveyed the land they received from their father by deed to George and Leon Spivey, as co-executors of the estate of R.H. Spivey. In a warranty deed signed by all of the heirs, the estate transferred three equal parcels of land to George, Leon, and Tommy Spivey, with George Spivey receiving all of the land that was adjacent to the Church. The warranty deed for the transfer to George Spivey used the boundary line established in the 1990 survey to describe the land conveyed to George Spivey. George sold his tract to Leon Spivey the same day he received it.

Leon Spivey testified that he agreed to the boundary line established by his brother George and Roger Smith in 1990. He claimed that he was deceived by his brother because George told him "they got a deed to that land, and I said, well, if they've got a deed to it, it's theirs." He testified that he agreed to it so that the estate could divide the property equally among the three brothers.

Leon Spivey admitted at trial that he did not "own or have a deed to any property west of Red Bluff Church and Red Bluff Creek" because he was "deceived." He testified that he had always believed the Church was only entitled to four acres of land and added that he did not know where the boundary for his property was located and that nobody could know where it was located. He also testified, however, that he believed the Church had only four acres "that goes to the edge of the creek, don't go to the run of the creek." Pointing at the 1990 survey, he testified that the Church's property "stops right along there. That's the edge of the bushes of Red Bluff Creek." A relative also testified that the Church property was bounded by the edge of the creek or the high bushes. This witness testified that these bushes were "close to one hundred yards" away from the run of the creek, but that he could not "answer that exact because I've never measured. I don't know about that."

The jury returned a verdict finding "for the boundary line contended by the defendant" and awarded zero damages to the Church. After the return of the verdict, the Church renewed its earlier motion for a directed verdict in its favor. The trial court asked

for input from Spivey's counsel and the following exchange then took place:

> [SPIVEY'S COUNSEL]: Judge, the same argument as was made earlier on the record. I believe the jury has spoken in this matter as to the facts of this case, . . . and as to their acceptance of the boundary contended by Mr. Spivey on the stand and the evidence that we presented in this case today.
> THE COURT: Well, pray tell me what kind of judgment do you suggest I draw on this jury verdict?
> [SPIVEY'S COUNSEL]: Judge, on this very moment I can't propose that to you, but if I could submit that to you in a couple of days, I'd be glad to.
> THE COURT: There's no way under the sun that I could write a judgment based on the verdict in favor of the Defendant because the Defendant had no land line which to submit to the jury. However, I'm concerned the verdict may mean that the Plaintiff failed to make out the Plaintiff's case. You know, a Jury can find for neither party. So it may be we're back where we started from, and I'm not going to rule on the motion until I can be furnished some authority on that question, okay?

The trial court subsequently entered a written order in which it concluded:

> [I]t appearing to the court that Defendant has utterly failed to introduce evidence to demonstrate the location of any line which he might contend is the boundary, while Plaintiff has proven the location of the boundary which it contends is the line between the parties, and, a verdict and judgment in favor of Plaintiff is demanded as to the location of said line.

The court then entered a judgment in favor of the Church that incorporated the 1990 survey. Its order also stated, "The jury having duly rendered its verdict on the issue of damages and attorneys fees in favor of Defendant and against Plaintiff, it is hereby ordered and adjudged that Plaintiff recover nothing from Defendant for damages or attorneys fees."

## Case No. A09A2011

Leon Spivey contends the trial court erred by setting aside the jury's verdict in his favor and concluding that the evidence de-

manded the conclusion that the boundary identified in the 1990 survey governed. We disagree.

(a) First, the trial court correctly concluded that the evidence presented by Spivey to support his claimed boundary line was "too vague and indefinite to allow any recovery." *Watkins v. Watkins*, 187 Ga. 731, 734 (2 SE2d 63) (1939).

(b) Having concluded that the evidence did not support the jury's verdict in favor of Leon Spivey, we must now consider whether the evidence demanded a judgment in favor of the Church.

"Where the dividing line between coterminous owners is indefinite, unascertained, or disputed, the owners may by parol agreement duly executed establish the line, and the line thus established will control their deeds, notwithstanding the statute of frauds." *Hart v. Carter*, 150 Ga. 289, 290 (1) (103 SE 457) (1920). "Such an agreement is not within the statute of frauds, because it does not operate as a conveyance of land, but merely as an agreement as to what has been conveyed." *Johnson v. Mary-Leila Cotton Mills*, 155 Ga. 344, 345 (116 SE 609) (1923). "[W]hen such an agreement is made and executed, it is immediately binding upon the makers and subsequent purchasers." *Wright v. Anthony*, 205 Ga. 47, 48 (1) (52 SE2d 316) (1949). It "is irrevocable." *Johnson*, supra, 155 Ga. at 345.

In this case, it is undisputed that a long-standing boundary line dispute existed between the Church and the Spivey family. It is also undisputed that George and Leon Spivey agreed to a boundary line in the 1990 survey. The 1990 survey stated in typed letters that it had been prepared "for GEORGE, LEON, AND HARVEY [TOMMY] SPIVEY." It is likewise undisputed that all three brothers signed warranty deeds in which the estate conveyed three separate parcels to them using the boundary line established in the 1990 survey. George Spivey received all of the land that was adjacent to the Church and later sold this land to Leon Spivey in a warranty deed that also used the boundary line in the 1990 survey. The record also shows that George Spivey represented to the Church that he was acting on behalf of his siblings when he agreed to the boundary line and that he had obtained their consent to the boundary line. Tommy Spivey did not testify at trial, and no evidence was presented that George Spivey was not acting on his behalf when he agreed upon the boundary line. Based upon all of this evidence, the trial court did not err when it concluded that the evidence demanded a judgment in favor of the Church with regard to the boundary line established in the 1990 survey. See *Freeman v. Nelson*, 138 Ga. App. 697, 698 (4) (227 SE2d 475) (1976); *White v. Rainwater*, 205 Ga. 219, 224-225 (52 SE2d 838) (1949) (parties bound by terms of deed, which distinctly fixed the lines of the land intended to be sold, until it is corrected and reformed).

Spivey contends that a jury issue was presented based upon his contention that his consent to the boundary line was obtained through fraud. We disagree. Justifiable reliance is an essential element of fraud. *Peacock v. Kiser*, 272 Ga. App. 83, 85 (1) (611 SE2d 747) (2005). And it is well settled that "a party buying real property who makes no attempt to discover the boundaries of the property cannot be said to have justifiably relied on a misrepresentation by the seller regarding those boundaries." (Citations, punctuation and footnote omitted.) *Chhina Family Partnership, L.P. v. S-K Group of Motels*, 275 Ga. App. 811, 815 (3) (622 SE2d 40) (2005). In this case, Leon Spivey contended that he was deceived by his brother because his brother told him the Church had a deed to the land. It is undisputed, however, that Leon Spivey made no effort to determine the boundary for himself or examine the deed referenced by his brother before agreeing to the boundary. "Thus, his fraud claim fails as a matter of law." *Peacock*, supra, 272 Ga. App. at 86 (1).

Based on the above, we affirm the trial court's grant of a judgment in favor of the Church in Case No. A09A2011.

### Case No. A09A2012

In its cross-appeal, the Church contends that the trial court erred by failing to order a new trial on the issue of its damages. When the jury awarded its verdict in favor of Leon Spivey, it awarded zero damages and attorney fees to the Church. If any evidence had supported the jury's award in favor of Leon Spivey, then its award of no damages to the Church would have been correct. A "jury verdict for zero damages [is] a judgment for the defendant." *Gielow v. Strickland*, 185 Ga. App. 85, 87 (4) (363 SE2d 278) (1987).

When the trial court entered the judgment in favor of the Church, it should have also refused to enter judgment on the damages portion of the jury's verdict and should have granted a new trial to the Church on the issue of these damages. See generally OCGA § 9-11-50. We therefore vacate the portion of the judgment ordering that the Church could not recover damages and attorney fees from Leon Spivey and remand this case for further proceedings consistent with this opinion.

*Judgment affirmed in Case No. A09A2011. Judgment vacated in part and case remanded in Case No. A09A2012. Phipps and Bernes, JJ., concur.*

DECIDED MARCH 2, 2010 —
RECONSIDERATION DENIED APRIL 7, 2010 —

F. *Shea Browning, Kenneth E. Futch*, for appellant.
*Robert B. Sumner, James D. Hudson*, for appellees.